UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ROBERT FRANKLIN,

                    Plaintiff,                          Case No. 1:21-cv-313

v.                                                      Honorable Robert J. Jonker

HEIDI E. WASHINGTON et al.,

                    Defendants.

_____/

## OPINION

            This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the

Court is required to dismiss any prisoner action brought under federal law if the complaint is

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary

relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C.

§ 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*,

404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly

irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these

standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.      Factual allegations

            Plaintiff is presently incarcerated with the Michigan Department of Corrections

(MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan.  The

events about which he complains occurred at that facility.   Plaintiff sues MDOC Director Heidi

E. Washington and the following IBC employees:  Warden Unknown Macauley, Correctional Officer Unknown Gibson, Prisoner Counselor Unknown Battle, and Food Service Director Unknown Klein.

Plaintiff's complaint resembles dozens of others that have been brought in the Western District of Michigan by prisoners with legitimate concerns posed by the MDOC's response to the COVID-19 pandemic.  Plaintiff alleges that Michigan reported its first case of COVID-19 in March 2020 but that Defendants Washington and Macauley failed to take appropriate steps to prevent COVID-19 from spreading within IBC.

In late August 2020, Plaintiff's unit had a COVID-19 outbreak.  IBC administration designated his section of the unit as the area where prisoners who may have been exposed to COVID-19 were housed.  Plaintiff alleges that he shared a cell with a prisoner who, at some point, tested positive.  Plaintiff requested to transfer to a unit without any COVID-19 infections, but Defendants Battle and Macauley denied his request.

During the late-August outbreak, Plaintiff also worked as a porter cleaning the unit, including cells that had been occupied by prisoners with COVID-19.  Plaintiff alleges that he was given "watered down sodium" (2d Am. Compl., ECF No. 10, PageID.316) to clean.  Defendant Gibson denied Plaintiff's request for different personal protection equipment (PPE) and bleach. Plaintiff threatened to send a grievance to the warden.  According to Plaintiff's complaint, Defendant Gibson responded, "[The warden] do[es]n[']t give a care[;] write it, I'll beat your black ass." (*Id.*)  Plaintiff allegedly filed grievances, which Defendant Battle and Strode (not a party) denied.[1]

---

[1] Plaintiff's allegations are not altogether clear.  In the body of the complaint, Plaintiff alleges that "he requested grievances from . . . Battle" but was denied.  (2d Am. Compl., ECF No. 10, PageID.316.)  In his list of claims, Plaintiff alleges that "Battle denied [P]laintiff[']s grievances concerning COVID-19 . . . ."  (*Id.*, PageID.319.)

More than two months later, on November 12, 2020, Plaintiff tested positive for COVID-19.  He suffered from multiple symptoms.

In early February 2021, an outbreak of the B.1.1.7 novel coronavirus variant occurred at IBC.  The complaint suggests that two unidentified corrections officers tested positive for the variant and exposed the prison population because the officers did not take a rapid test or quarantine each time they entered the facility.  According to the complaint, the corrections officers tested positive on February 5, 2021.  On February 6, 2021, 80 prisoners from Unit 7 who worked in food services tested positive for the B.1.1.7 variant.  Plaintiff does not provide specific dates, but thereafter, 50 prisoners from Unit 6 who worked in food services tested positive.  Then 50 prisoners from Plaintiff's unit who worked in food services tested positive.  Plaintiff alleges that Defendants Washington, Macauley, and Klein did not order the kitchens "sanitized, ster[i]lized, or fum[i]gated to avoid the spread of COVID-19 . . . ."  (*Id.*, PageID.317.)

Plaintiff tested positive for the B.1.1.7 variant on February 23, 2021.  He asserts that shortly before he fell ill, he cleaned a cell that had been occupied by one of the food service workers who had tested positive for COVID-19.   Plaintiff states that while he was ill, he was denied time in the prison yard and access to mail rounds, and he was limited each day to 5 minutes of video call time and 8 minutes of traditional phone time.

In his complaint, Plaintiff asserts what he formats as five claims that Defendants' conduct violated the First and Eighth Amendments.  Three of his purported claims allege both First and Eighth Amendment violations.  Plaintiff seeks declaratory relief, damages, and costs.

## II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

4

**III.     Claim 4:  Denial of grievances**

In Claim 4, Plaintiff contends that Defendant Battle denied his grievances related to COVID-19, which denied Plaintiff access to the courts in violation of the First Amendment and further constituted cruel and unusual punishment in violation of the Eighth Amendment.

**A.     Access to the Courts**

Plaintiff's right to petition government is not violated by Defendant Battle's failure to process or act on his grievances.  The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, Defendant Battle's actions have not barred Plaintiff from seeking a remedy for his grievances.  *See Cruz v. Beto*, 405 U.S. 319, 321 (1972).  "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)).  Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process.  *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).  Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim.  *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977).  The exhaustion requirement only

5

mandates exhaustion of *available* administrative remedies.  *See* 42 U.S.C. § 1997e(a).  If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.  *See Ross v. Blake*, 578 U.S. 632, 642 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).  In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable access to the courts claim.

### B.    Respondeat Superior

To the extent Plaintiff contends that Defendant Battle's denial of grievances also constitutes an Eighth Amendment violation, his claim fails.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Accordingly, Plaintiff fails to state a claim against Defendant Battle related to the denial of grievances.

## IV.    Eighth Amendment

Plaintiff alleges multiple violations of his Eighth Amendment rights.  Plaintiff contends in Claim 1 that Defendants Washington and Macauley permitted MDOC employees to enter prisons without quarantining or rapid testing each time they entered.  In Claim 2, Plaintiff alleges that Defendants Macauley and Battle allowed Plaintiff to share a cell with a prisoner who had COVID-19.  In Claim 3, Plaintiff alleges that Defendant Gibson provided him a sodium and water solution to clean, but Gibson refused to provide bleach or better PPE.  In Claim 5, Plaintiff contends that Defendants Washington and Macauley failed to prevent a COVID-19 outbreak at IBC.  Reading Plaintiff's complaint with all due liberality, *see Haines*, 404 U.S. at 520, Plaintiff further argues that Defendants Washington, Macauley, and Klein did not sanitize or fumigate the kitchens between shifts.

### A.    Standard

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).  The deliberate-indifference standard includes both objective and subjective components.  *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37.  To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834.  Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety."  *Id.* at 837.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  *Id.* at 844.

## B.    Analysis

Plaintiff alleges that he was incarcerated under conditions that put him at risk of contracting COVID-19.

### 1.    Objective prong

In a 2020 case brought by federal prisoners under 28 U.S.C. § 2241, the Sixth Circuit addressed the issue of whether the Bureau of Prisons (BOP) violated the Eighth Amendment rights of medically vulnerable inmates at the Elkton Federal Correctional Institution by failing to adequately protect them from COVID-19 infection.  *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020).  In the opinion, the Sixth Circuit found that the plaintiffs in *Wilson* had easily satisfied the objective component of an Eighth Amendment claim:

> The COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death.  The BOP acknowledges that "[t]he health risks posed by COVID-19 are significant."  CA6 R. 35, Appellant Br., PageID 42.  The infection and fatality rates at Elton have borne out the serious risk of COVID-19, despite the BOP's efforts.  The transmissibility of the COVID-19 virus in conjunction with Elton's dormitory-style housing—which places inmates within feet of each other—and the medically-vulnerable subclass's health risks, presents a substantial risk that petitioners at Elton will be infected with COVID-19 and have serious health effects as a result, including, and up to, death.  Petitioners have put forth sufficient evidence that they are "incarcerated under conditions posing a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834.

*Id.* at 840.

The Sixth Circuit has determined that a plaintiff may satisfy the objective prong by alleging conditions that could facilitate COVID-19 transmission within a prison and the health risks posed by the virus.  Plaintiff has done so.  The Court therefore concludes that Plaintiff alleges facts sufficient to satisfy the objective prong of the deliberate indifference test.

### 2.    Subjective prong

Notwithstanding Plaintiff's ability to satisfy the objective prong, he fails to allege facts sufficient to satisfy the subjective prong of the deliberate indifference test in any of his claims.

### a.    Claims 1 and 5:  General COVID-19 outbreak

In Plaintiff's first and last claims, he alleges that Defendants Washington and Macauley failed generally to prevent an outbreak of COVID-19 at IBC, which led to Plaintiff contracting COVID-19.  Plaintiff specifically contends that Defendants Washington and Macauley violated the Eighth Amendment because they did not require rapid testing or quarantining of all prison personnel each time staff entered IBC.

The Sixth Circuit went on in *Wilson* to address the subjective prong of an Eighth Amendment claim, noting that the pertinent question was whether the BOP's actions demonstrated deliberate indifference to the serious risk of harm posed by COVID-19 in the prison.

There is no question that the BOP was aware of and understood the potential risk of serious harm to inmates at Elkton through exposure to the COVID-19 virus. As of April 22, fifty-nine inmates and forty-six staff members tested positive for COVID-19, and six inmates had died. "We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Hope v. Pelzer*, 536 U.S. 730, 738 (2002). The BOP acknowledged the risk from COVID-19 and implemented a six-phase plan to mitigate the risk of COVID-19 spreading at Elkton.

The key inquiry is whether the BOP "responded reasonably to th[is] risk." *Farmer*, 511 U.S. at 844. The BOP contends that it has acted "assiduously to protect inmates from the risks of COVID-19, to the extent possible." CA6 R. 35, Appellant Br., PageID 42. These actions include

> implement[ing] measures to screen inmates for the virus; isolat[ing] and quarantin[ing] inmates who may have contracted the virus; limit[ing] inmates' movement from their residential areas and otherwise limit[ing] group gatherings; conduct[ing] testing in accordance with CDC guidance; limit[ing] staff and visitors and subject[ing] them to enhanced screening; clean[ing] common areas and giv[ing] inmates disinfectant to clean their cells; provid[ing] inmates continuous access to sinks, water, and soap; educat[ing] staff and inmates about ways to avoid contracting and transmitting the virus; and provid[ing] masks to inmates and various other personal protective equipment to staff.

*Id.* at 42–43.

The BOP argues that these actions show it has responded reasonably to the risk posed by COVID-19 and that the conditions at Elkton cannot be found to violate the Eighth Amendment. We agree.

Here, while the harm imposed by COVID-19 on inmates at Elkton "ultimately [is] not averted," the BOP has "responded reasonably to the risk" and therefore has not been deliberately indifferent to the inmates' Eighth Amendment rights. *Farmer*, 511 U.S. at 844. The BOP implemented a six-phase action plan to reduce the risk of COVID-19 spread at Elkton. Before the district court granted the preliminary injunction at issue, the BOP took preventative measures, including screening for symptoms, educating staff and inmates about COVID-19, cancelling visitation, quarantining new inmates, implementing regular cleaning, providing disinfectant supplies, and providing masks. The BOP initially struggled to scale up its testing capacity just before the district court issued the preliminary injunction, but even there the BOP represented that it was on the cusp of expanding testing. The BOP's efforts to expand testing demonstrate the opposite of a disregard of a serious health risk.

*Id.* at 840–41.

In its decision, the Sixth Circuit recognized that other Sixth Circuit decisions have found similar responses by prison officials and medical personnel, such as cleaning cells, quarantining infected inmates, and distributing information about a disease in an effort to prevent spread, to be reasonable. *Id.* at 841 (citing *Wooler v. Hickman Cnty.*, 377 F. App'x 502, 506 (6th Cir. 2010); *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448–49 (6th Cir. 2014); *Harrison v. Ash*, 539 F.3d 510, 519–20 (6th Cir. 2008); *Rhinehart v. Scutt*, 894 F.3d 721, 740 (6th Cir. 2018)). The *Wilson* Court also noted that other circuits had concluded that similar actions by prison officials demonstrated a reasonable response to the risk posed by COVID-19:

> In *Swain* [*v. Junior*], the Eleventh Circuit granted a stay of a preliminary injunction pending appeal on state inmates' Eighth Amendment claims. 958 F.3d [1081,] 1085 [(11th Cir. 2020) (per curiam)]. The Eleventh Circuit held that "the inability to take a positive action likely does not constitute 'a state of mind more blameworthy than negligence,'" and "the evidence supports that [Metro West Detention Center ("MWDC") is] taking the risk of COVID-19 seriously." *Id.* at 1088–90 (citation omitted). In response to the pandemic in early March, MWDC began "cancelling inmate visitation; screening arrestees, inmates, and staff; and advising staff of use of protective equipment and sanitation practices" and, after reviewing further CDC guidance, began "daily temperature screenings of all persons entering Metro West, establish[ed] a 'COVID-19 Incident Command Center and Response Line' to track testing and identify close contacts with the virus, develop[ed] a social hygiene campaign, and mandate[d] that staff and inmates wear protective masks at all times." *Id.* at 1085–86. The Eleventh Circuit held that, because MWDC "adopted extensive safety measures such as increasing screening, providing protective equipment, adopting [physical] distancing when possible, quarantining symptomatic inmates, and enhancing cleaning procedures," MWDC's actions likely did not amount to deliberate indifference. *Id.* at 1090.
>
> Similarly, the Fifth Circuit granted stays of two preliminary injunctions in *Valentine* [*v. Collier*, 956 F.3d 797 (5th Cir. 2020) (per curiam),] and *Marlowe* [*v. LeBlanc*, No. 20-30276, 2020 WL 2043425 (5th Cir. Apr. 27, 2020) (per curiam)]. In *Valentine*, inmates at Texas's Wallace Pack Unit filed a class action suit against the Texas Department of Criminal Justice ("TDCJ") alleging violations of the Eighth Amendment. 956 F.3d at 799. In response to the COVID-19 pandemic, TDCJ had taken preventative measures such as providing "access to soap, tissues, gloves, [and] masks," implementing "regular cleaning," "quarantin[ing] of new prisoners," and ensuring "[physical] distancing during transport." *Id.* at 802. The Fifth Circuit determined that the district court applied the wrong legal standard by "collaps[ing] the objective and subjective components of the Eighth Amendment inquiry" by "treating inadequate measures as dispositive of the Defendants' mental

state" under the subjective prong and held that "accounting for the protective measures TDCJ has taken" the plaintiffs had not shown deliberate indifference. *Id.* at 802–03.  In *Marlow*e, the Fifth Circuit relied on its reasoning in *Valentine* and again reiterated that there was "little basis for concluding that [the correctional center's] mitigation efforts," which included "providing prisoners with disinfectant spray and two cloth masks[,] . . . limiting the number of prisoners in the infirmary lobby[,] and painting markers on walkways to promote [physical] distancing," were insufficient.  2020 WL 2043425, at *2–3.

*Wilson*, 961 F.3d at 841–42.

After reviewing the cases, the *Wilson* Court held that even if the BOP's response to COVID-19 was inadequate, it took many affirmative actions, not only to treat and quarantine inmates who had tested positive, but also to prevent widespread transmission of COVID-19.  The Court held that because the BOP had neither disregarded a known risk nor failed to take steps to address the risk, it did not act with deliberate indifference in violation of the Eighth Amendment. *Id.* at 843–44.

In addition, in *Cameron v. Bouchard,* 818 F. App'x 393 (6th Cir. 2020), the Court relied on *Wilson* to find that pretrial detainees in the Oakland County Jail were unlikely to succeed on the merits of their Eighth and Fourteenth Amendment claims.  The plaintiffs in *Cameron* claimed that jail officials were deliberately indifferent to the substantial risk of harm posed by COVID-19 at the jail.  The district court initially granted a preliminary injunction requiring the defendants to "(1) provide all [j]ail inmates with access to certain protective measures and medical care intended to limit exposure, limit transmission, and/or treat COVID-19, and (2) provide the district court and Plaintiffs' counsel with a list of medically vulnerable inmates within three business days." *Id.* at 394.  However, following the decision in *Wilson*, the Court granted the defendants' renewed emergency motion to stay the preliminary injunction, finding that the preventative measures taken by the defendants were similar to those taken by officials in *Wilson* and, thus, were a reasonable response to the threat posed by COVID-19 to the plaintiffs. *Id.* at

395.  Subsequently, in an unpublished opinion issued on July 9, 2020, the Sixth Circuit vacated

the injunction.  *Cameron v. Bouchard*, 815 F. App'x 978 (6th Cir. 2020).

             In the instant case, Plaintiff claims that Defendants Washington's and Macauley's

handling of the COVID-19 crisis at IBC violated his Eighth Amendment rights.  The Court notes

that the MDOC issued a COVID-19 Director's Office Memorandum (DOM) on April 8, 2020, and

issued multiple revised DOMs on the subject to limit the threat posed by COVID-19.[2]  *See* MDOC

DOM 2020-30 (eff. Apr. 8, 2020) (mandating multiple protective measures including the wearing

of masks by prisoners and staff, screening of all individuals before entering prison facilities,

keeping of social distance, restricting visits and phone calls, and limiting transfers and cell moves);

DOM 2020-30R2 (eff. May 26, 2020) (outlining specific precautions to be taken by staff members,

including the use of personal protective equipment and hand sanitizer); DOM 2020-30R3 (eff.

May 27, 2020); DOM 2020-30R4 (eff. Aug. 10, 2020); DOM 2020-30R5 (eff. Aug. 25, 2020);

DOM 2020-30R6 (eff. Aug. 27, 2020); DOM 2020-30R7 (eff. Nov. 5, 2020); DOM 2020-30R8

(eff. Nov. 24, 2020); DOM 2021-26 (eff. Jan. 1, 2021); DOM 2021-26R (eff. Jan. 12, 2021);

DOM 2021-26R (eff. Jan. 12, 2021); DOM 2021-26R2 (eff. Jan. 21, 2021); DOM 2021-26R3 (eff.

Jan. 25, 2021); DOM 2021-26R4 (eff. Mar. 5, 2021); DOM 2021-26R5 (eff. Mar. 19, 2021);

DOM 2021-26R6 (eff. Mar. 26, 2021); DOM 2021-26R7 (eff. June 23, 2021); DOM 2021-26R7

(eff. June 23, 2021); DOM 2021-26R8 (eff. Aug. 6, 2021); DOM 2021-26R9 (eff. Aug. 23, 2021);

---

[2] The Court takes judicial notice of these facts under Rule 201 of the Federal Rules of Evidence.  The accuracy of the source regarding this specific information "cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2); *see also* Paul F. Rothstein, *Federal Rules of Evidence* 49 (3d ed. 2019) (citing *Matthews v. NFL Mgmt. Council*, 688 F.3d 1107 (9th Cir. 2012) (taking judicial notice of statistics on the NFL website that the plaintiff played 13 games in California over 19 years); *Victaulic Co. v. Tieman*, 499 F.3d 227, 236–37 (3d. Cir. 2007), as amended (Nov. 20, 2007) (finding error where a district court took judicial notice of facts stated in "a party's . . . marketing material" on an "unauthenticated" website because marketing materials often lack precise and candid information and the source was not authenticated)).  Moreover, "[t]he court may take judicial notice at *any* stage of the proceeding."  Fed. R. Evid. 201(d) (emphasis added).  Thus, the Court may take judicial notice even at this early juncture because the Court is permitted to take judicial notice *sua sponte*, Fed. R. Evid. 201(c)(1), and "the fact is not subject to reasonable dispute," Fed. R. Evid. 201(b).

DOM 2021-26R10 (eff. Oct. 11, 2021); DOM 2021-26R11 (eff. Nov. 19, 2021); DOM 2021-26R12 (eff. Dec. 3, 2021).  The DOMs set forth specific details about protective measures to be taken in all facilities:  describing the types of PPE to be worn by staff and when; setting screening criteria for individuals entering facilities; setting social distancing requirements; establishing isolation areas and practices for isolation; setting practices for managing prisoners under investigation for COVID-19; modifying how personal property is managed; setting requirements for jail transfers; outlining communication adjustments and video visitation; upgrading hygiene, health care, and food service policies; setting protocols for COVID-19 testing of prisoners; and making other necessary adjustments to practices to manage the pandemic.  Thus, the MDOC responded to the COVID-19 threat by adopting new policies and adjusting practices.

Moreover, Plaintiff's suggestion that Defendants Washington and Macauley should have mandated testing or quarantining for all MDOC staff each day before starting a shift at a prison appears misplaced.  Perhaps Plaintiff labors under the false impression that COVID-19 testing kits were readily available.  That was not the case.  The nation faced several shortages of testing kits during the summer and fall months of 2020.  *See* GAO, *COVID-19: Urgent Actions Needed to Better Ensure an Effective Federal Response*, https://www.gao.gov/products/gao-21-191 (last visited Dec. 3, 2021) ("In September 2020, GAO reported that ongoing constraints with the availability of certain types of personal protective equipment (PPE) and testing supplies remain due to a supply chain with limited domestic production and high global demand.  In October 2020, GAO surveyed public health and emergency management officials from all states . . . and found . . . about one-third to one-half [of states] reported shortages in . . . testing supplies.").[3]

---

[3] Notwithstanding the Court's ability to take judicial notice of these facts under Rule 201 of the Federal Rules of Evidence, the information in this paragraph plays no role in the Court's decision.  Instead, this information merely provides context and additional information to a prisoner who is incarcerated amidst an ongoing deadly pandemic.  *C.f. United States v. Mathews*, 846 F. App'x 362, 364 n.3 (6th Cir. 2021).

Clearly, Defendants Washington and Macauley have taken extensive steps to address the risk of COVID-19 to inmates statewide and at IBC.  As noted by the Sixth Circuit in *Wilson*, such actions demonstrate the opposite of a disregard of a serious health risk.  *Wilson*, 961 F.3d at 841.  Therefore, Plaintiff fails to state an Eighth Amendment claim against Defendants Washington and Macauley for their failure to prevent a COVID-19 outbreak at IBC.[4]

### b.  Claim 2:  Shared cell

Plaintiff's vague allegations that Defendants Macauley and Battle placed him in a cell or room with a prisoner who had COVID-19 likewise fail to state a claim.  Plaintiff provides no context about his exposure to his cellmate and the timeline of his cellmate's infection.  He fails to indicate when his cellmate tested positive, much less that his cellmate was contagious and that Defendants Macauley and Battle had reason to know about it when they assigned him to the cell.  Indeed, that Plaintiff first tested positive for COVID-19 more than two months after he began sharing his cell indicates that Plaintiff may not have been at serious risk.  In short, Plaintiff has alleged facts suggesting only the mere possibility that Defendants violated the Eighth Amendment.  His allegations therefore fail to state a claim.  *See Iqbal*, 556 U.S. at 678.

### c.  Claim 3:  Cleaning cells

For similar reasons, Plaintiff's allegation that Defendant Gibson refused to provide alternative cleaning supplies and alternative PPE on August 28, 2020, likewise fails to state an Eighth Amendment claim.  Plaintiff did not test positive for COVID-19 until November 12, 2020.

---

[4] Plaintiff also asserts that Defendants Washington and Macauley failed to follow unspecified executive orders by Governor Gretchen Whitmer.  (2d Am. Compl., ECF No. 10, PageID.319.)  To the extent that Plaintiff raises a state-law claim, he is not entitled to relief under § 1983.  Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  Moreover, Plaintiff's assertions lack any detail to suggest that his facts "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Instead, the allegations are merely conclusory.  Conclusory allegations of unlawful conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

More importantly, Plaintiff does not allege that he lacked *any* mask or cleaning supplies.  He simply contends that Defendant Gibson refused to supply the PPE and cleaning products that Plaintiff preferred.  Yet, Plaintiff does not allege that he faced an increased risk of contracting COVID-19 when using the PPE and cleaning solution provided to him, nor does he allege facts demonstrating that Defendant knew of and disregarded any such risk.  He therefore fails to explain how Defendant Gibson knew of and disregarded an excess risk to Plaintiff's health or safety.

Plaintiff may believe that the general public has had access to, and often uses, N95 masks.  Such masks have been scarce, even for healthcare workers.  Indeed, the CDC explicitly directs that people "DO NOT choose masks that . . . [a]re intended for healthcare workers, including N95 respirators."  CDC, *Your Guide to Masks*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/about-face-coverings.html (last modified Aug. 13, 2021).[5]  Instead, the CDC recommends washable cloth masks with two or more layers.  *Id.*

Notwithstanding Plaintiff's preference for other PPE and cleaning supplies, because Plaintiff fails to allege facts explaining that Defendant Gibson knew of and disregarded an excessive risk to Plaintiff's health or safety, Plaintiff fails to state an Eighth Amendment claim against him.

### d.  IBC kitchen

To the extent that Plaintiff also asserts a claim that Defendants Washington, Macauley, and Klein should have sanitized or fumigated the kitchens in February 2021, his claim fails.  Plaintiff does not adequately allege that the IBC kitchen in particular posed an excessive risk much less that any of the three Defendants knew of and disregarded any such risk.  He merely

---

[5] Like the Court's comments above discussing the scarcity of COVID-19 testing kits, this paragraph plays no role in the Court's decision.  This information provides context and additional information to a prisoner who is incarcerated amidst an ongoing deadly pandemic.  *C.f. Mathews*, 846 F. App'x at 364 n.3.

speculates, with the benefit of hindsight, that COVID-19 transmitted between prisoners in the IBC kitchen.  He does not allege any facts to demonstrate that the three Defendants knew of a risk in the kitchen, and the purported risk was not so obvious as to permit the inference that Defendants Washington, Macauley, and Klein were aware of it.  Consequently, Plaintiff fails to allege facts sufficient to satisfy the subjective prong in a claim related to the IBC kitchen.  *See Hope*, 536 U.S. at 738.

Although the Court is sympathetic to Plaintiff's general concern about the COVID-19 virus, his claims are entirely built upon rank speculation.  Plaintiff has failed to allege facts demonstrating that any Defendant was deliberately indifferent to his health and safety. Therefore, he fails to state an Eighth Amendment claim.

## V.      First Amendment

In two of his claims raising Eighth Amendment issues, Plaintiff also argues that Defendants retaliated against him in violation of the First Amendment.

### A.      Standard

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### B.    Analysis

In Claim 3, Plaintiff contends that Defendant Gibson retaliated against him for intending to file a grievance after Gibson denied Plaintiff's request for different cleaning supplies and PPE.  Plaintiff further argues in Claim 5 that Defendants Washington and Macauley retaliated against him in violation of the First Amendment when his recreation time, phone time, and other privileges were limited while he was ill with COVID-19.

### 1.    Claim 3:  Defendant Gibson

In Claim 3, Plaintiff asserts that on August 28, 2020, he threatened to file a grievance with the warden because Defendant Gibson refused to give Plaintiff the alternative PPE and cleaning supplies he requested.  Defendant Gibson allegedly responded, "[The warden] do[es]n[']t give a care[;] write it, I'll beat your black ass."  (2d Am. Compl., ECF No. 10, PageID.316.)

Plaintiff sufficiently alleges that he was engaged in protected conduct.  The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

Plaintiff's allegation that Defendant Gibson took an action adverse to Plaintiff is a closer call.  To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights.  *Thaddeus-X*, 175 F.3d at 396.  The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

18

A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g.*, *Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results).  However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations.  *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.

Defendant Gibson's alleged threat was entirely vague and was unaccompanied by any actual conduct.  Plaintiff has not provided any allegations that would support a belief that Gibson intended to physically harm him.  For example, Plaintiff alleges neither that Gibson had previously physically beaten him or any other prisoner nor that Gibson implied how, when, where or to what extent he would physically harm Plaintiff.  Plaintiff merely alleges that Gibson made a vague statement that Gibson would "beat" him.  The Court concludes that such a vague statement would not deter a person of ordinary firmness from exercising his or her First Amendment rights. *See, e.g.*, *Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Shisler v. Golladay*, No. 2:19-cv-80, 2019 WL 2590693, at *4 (W.D. Mich. June 25, 2019) (Golladay's threat that the ticket would be the least of the plaintiff's worries was "simply too vague" to support a First Amendment retaliation claim); *Dahlstrom v. Butler*, No. 2:18-cv-101, 2019 WL 91999, at *11 (W.D. Mich. Jan. 3, 2019) ("Krause's threat[--to 'get' a prisoner who files a grievance on Krause and 'steps out of line'--] is too vague and non-specific to deter a person of ordinary firmness from engaging in protected conduct."); *Yates v. Rogers*, No. 2:18-cv-180, 2018 WL 6629366, at *7 (W.D. Mich. Dec. 19, 2018) ("Defendant's vague threat to 'get' Plaintiff does not carry the same seriousness . . . ."); *Johnson v. Govern*, No. 2:17-cv-125, 2018 WL 6321548,

at *2 (W.D. Mich. Dec. 4, 2018) ("Govern's alleged threat to 'put a case' on Johnson . . . was too vague to constitute adverse action."); *Hunter v. Palmer*, No. 1:17-cv-109, 2017 WL 1276762, at *11 (W.D. Mich. Apr. 6, 2017) ("Defendant DeMaeyer told Plaintiff that complaining would get him into a lot of trouble . . . . Such a vague threat of unspecified harm falls short of adverse action.").

Additionally, Defendant Gibson's purported threat was not only vague, but it was also ambiguous.  Gibson's statement could merely communicate his belief that he would prevail against Plaintiff (i.e., beat Plaintiff) if Plaintiff were to file a grievance against him.  Gibson's alleged statement maintained that the warden did not agree with Plaintiff's position.  Consequently, Gibson did not appear to fear Plaintiff's plan to file the grievance.  Indeed, Gibson told Plaintiff to "write it[.]"  Only after telling Plaintiff to file a grievance did he say that he would "beat" Plaintiff.  When read in context, Defendant Gibson's statement appears to express his belief that Plaintiff's grievance would fail.

In sum, Defendant Gibson's alleged threat to "beat" Plaintiff fails to satisfy the adverse-action element required to advance a retaliation claim.  Gibson's statement is simply too vague and too ambiguous to deter a prisoner of ordinary firmness from filing a grievance.

Accordingly, Plaintiff's retaliation claim against Defendant Gibson is properly dismissed.

### 2.      Claim 5:  Washington and Macauley

In Claim 5, Plaintiff alleges that Defendants Washington and Macauley denied him recreation time in the prison yard and limited his laundry and access to phone calls, video calls, and mail in retaliation for Plaintiff's complaints about IBC's response to COVID-19.  It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d

106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Plaintiff merely alleges the ultimate fact of retaliation in this action. The alleged adverse actions—denying recreation time in the prison yard and limitations on communications and laundry—appear to be targeted at controlling the spread of the virus within the prison. Notwithstanding Plaintiff's assertions, these restrictions resemble policies that the MDOC adopted under multiple DOMs issued since April 2020 to reduce the risks of COVID-19 outbreaks. In short, Plaintiff has not presented any facts to support his conclusion that Defendants Washington and Macauley retaliated against him because he made oral or written grievances. Accordingly, his speculative allegation fails to state a claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the

Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:     December 7, 2021                        /s/ Robert J. Jonker
                                                   ROBERT J. JONKER
                                                   CHIEF UNITED STATES DISTRICT JUDGE